MUTUAL ADVERTISING CO. v. REFO et al.

(Circuit Court, D. South Carolina. May 23, 1896.)

COPYRIGHT—INFRINGEMENT—COUPON SYSTEMS.

Plaintiff issued a copyrighted pamphlet containing advertisements of the various merchants composing an association, and explaining its coupon system, the main features of which were the giving of coupons with each cash purchase, the delivery of a certain number thereof to the manager of the association, and receiving therefor an order for a premium selected from a given list. Defendants issued a folded paper, which contained advertisements, and explained their coupon system, which was similar in some respects to that of the plaintiff. But by defendants' plan, upon presentation of a specified number of coupons, the holder received an order which could be used as cash in the purchase of any article at any store in the combination. *Held*, that there was no infringement.

In Equity.

Mordecai & Gadsden, for complainant.
Smythe, Lee & Frost and Frank A. Dothage, for defendants.

SIMONTON, Circuit Judge. This is a bill to obtain an injunction for infringement of copyright. The motion comes up for a

temporary injunction, a restraining order having been heretofore issued. The paper copyrighted is in the form of a pamphlet. On its outer front cover is printed the following:

"Premium List. Mutual Advertising. Company. Office at Legerton's, 282 King Street, Charleston, S. C."

On the first page is printed:

"Premium List, with Directions as to Where and How to Get Useful and Valuable Articles Without Cost. (Copyright 1896, by Mutual Adv. Co. Mutual Advertising, Company. Office at Legerton's, 282 King Street, Charleston, S. C."

On the second page appears the following:

"Introductory. In this age of business rivalry, success belongs to the liberal, reliable, and progressive merchant. With this view the Mutual Advertising Company has arranged with the prominent merchants of Charleston, whose names appear elsewhere in this book, to issue premium coupons to customers for every cash purchase. These coupons will be given to all cash customers by the party selling the goods, and must be redeemed at the office of the Mutual Advertising Company, at Legerton's, 282 King street, and not by the firm or individual who issued them. For example: Suppose you were to make a cash purchase of goods amounting to $1, from any merchant named in this book, you'd at once get 8 coupons (one for every 12½ cents spent). These coupons, with any number of others, should then be taken to the office of the Mutual Advertising Company, and exchanged for an order on any of the merchants advertising in this book, for such premiums as may correspond with the coupons thus redeemed."

On the third page is:

"Index. Charleston's reliable merchants who have agreed to give premium coupons to all cash customers, and guarantied to sell their goods at the lowest market prices,"

—Followed by a list of merchants, with the pages on which their names appear.

The succeeding pages each contains name and business and address of each firm, and a list of articles which they will give as premiums for coupons, stating the number of coupons required for each. A few of the pages contain only the name, address, and business of firms. The last page has this:

"About Premiums: In order to get any of the premiums advertised in this book by the different merchants, it is not necessary that your coupons should all come from one store. Just go over the premium lists carefully, select the goods you want and the name of the firm who advertises it, and, if you have the necessary number of coupons (no matter what store or stores issued them to you), take them to the office of the Mutual Advertising Company, at Legerton's, 282 King street, and you'll promptly get an order for the goods."

On the back cover is printed:

"Well to Remember: That premium coupons are issued only by the merchants who are advertised in this book. That whenever you make a purchase for cash you are entitled to one coupon for every 12½ cents that you spend, and that these coupons are to be given to you by the sales people who serve you. Should you fail to receive them after making a cash purchase, don't hesitate to ask for them. That premium coupons are only given to retail customers who buy for cash, and are not intended for wholesale buyers or credit sales. That the coupons are not redeemed by the merchants who issue them, but by the Mutual Advertising Company, to whom you must apply for your premiums, and all information relating thereto. Mutual Advertising Company. Office at Legerton's, 282 King Street, Charleston, S. C."

It seems from this detailed statement of the contents of this pamphlet that it is an advertisement of a number of Charleston's reliable merchants, who have agreed to sell goods for cash on certain terms, and offer inducements therefor in the shape of coupons of value representing a discount for cash, which coupons are redeemable in obtaining from the merchants advertised articles named in a list of premiums. The office of the Mutual Advertising Company, which gets up the pamphlet, is to act as a sort of clearing house, where the coupons given for cash purchases are redeemed. In other words, the office of the pamphlet is to inform the public that the merchants named in it will give to cash customers certain advantages to be obtained in a certain way. The pamphlet itself teaches nothing more than this. A copyright has been secured by the corporation proprietor of the pamphlet. A corporation can secure a copyright. Schumacher v. Schwencke, 25 Fed. 466. The corporation, being a proprietor of the pamphlet, can secure copyright for it. Rev. St. § 4952. A pamphlet can be copyrighted. Clayton v. Stone, 2 Paine, 383, Fed. Cas. No. 2,872. It is not necessary that the book be original in its parts, or that it consist of original material, if the plan, method, and arrangements be original. Emerson v. Davies, 3 Story, 768, Fed. Cas. No. 4,436. Examining this pamphlet, it will be seen that its distinguishing feature, its merit, is its detail and explanation of a certain method by which advantages are secured to cash purchasers who use it in buying from the merchants named in the pamphlet. This end is subserved in addition to the advertisement of the merchants themselves, which alone is not a subject of copyright. Drone, Copyr. p. 164. The method thus explained is this: Each cash purchaser, on his purchase, is entitled to receive from the seller coupons at the rate of eight for a dollar. These coupons have a certain value,—one cent. When a sufficient number are in hand, the holder can go to the Mutual Advertising Company, and, after selecting from the list of premiums in the pamphlet the one wished, can get an order from this company for such premium, if the coupons be sufficient in value. The use of coupons either in the sale or purchase of goods has long been known. Advertising pamphlets are in constant use. This method of using coupons does give some information to the public, and is new. It requires some stretch of imagination to say that this pamphlet comes within the purpose of congress, the encouragement of learning, and the increase of useful knowledge, but the official charged with the duty has granted a copyright to this pamphlet, and his decision is accepted. The defendants charged with infringing it use a folded paper making four pages. It is called on the front page, "The Merchants Co-operative Coupon System and Directory of Reliable Retail Merchants of Charleston, S. C." It states that these merchants, having the highest regard for cash trade, and being awake to the interests of their patrons, have adopted the plan of giving coupons. One coupon will be given with each and every cash purchase of 8⅓ cents, or 12 with each cash purchase of $1. One hundred and fifty of the little green tickets are worth 50 cents in mer-

chandise, and 150 little green tickets are given with cash purchases aggregating $12.50. The interior of the book has the names and addresses and business of the merchants. On the back is the following:

"These coupons are accumulated from all cash purchases made at the stores named, and are then taken in quantities of 150 or more to the store of Messrs. Minnis & Co., 362 King street, where an order for merchandise is obtained upon any one or more of these stores, and used in purchasing anything whatever that may be desired, the same as cash, for its face value. Our customers are requested to ask for these coupons, as they are of some value, and cost you only your patronage. Orders given to our patrons by our manager in redeeming these coupons will at all times receive prompt and polite attention at all the stores named in this card. Count your coupons, and divide the number that you have accumulated by three, and you will get the redeemable value in dollars and cents. For instance, 150 coupons divided by three will be 50c. 150 coupons will have been accumulated when you have spent $12.50 at any one or at all of the firms that are in this combination. A prize to the holder of the largest number of 'The Merchants Co-Operative Coupons,' brought in for redemption during the month of April from the 1st to 30th, inclusive, an eight-day chime clock, with top ornament, worth $6, shown at Messrs. S. Thomas, Jr. & Bro., 257 King Street. M. P. Refo, Secretary and Treasurer. Office 362 King Street."

This is like the pamphlet of the complainant in many respects. The only thing which distinguishes it from an ordinary advertisement is the method in this use of the coupons. By the method of complainant the coupons are used in obtaining certain specified articles on a premium list. By the method used by the defendants, the coupons can be used for the purchase of all articles without qualification or discrimination. This is not the method of the complainant. The evidence discloses three modes of using coupons in cash purchases, shown in three separate pamphlets. One is a coupon of this character in the Advertising Journal Company in the Periodical Book. Another is that of the complainant. The third·is that of the defendants. They all agree in general character; that is to say, advertising merchants, and a plan of using coupons. The first plan contemplated the possession of a book of coupons by the purchaser. On his purchase the merchant tore out of the book the number of coupons provided, and, when all the coupons were thus exhausted, the holder of the book could make his purchase to the value of the coupons used. The second plan has been explained,—the purchase, receipt of coupons on the purchase, delivery of coupons to a common agent of the vendors, the use of the coupons in securing a premium from an advertised premium list. The third plan is that of defendants,—a purchase, receipt of coupons on the purchase, delivery to a common agent, the use of the coupons in the purchase of any article whatever not exceeding them in value. All these methods resemble each other in their advertising features, which are not the subject of copyright, and differ essentially in method of using coupons. There is no infringement. The bill is dismissed.